The plaintiff filed the following petition for a rc-hcaring.

It is with the most unfeigned reluctance, influenced by feelings and convictions which lie is unable to resist, that the plaintiff in error feels himself compelled to solicit of the court a re-hearing of this cause, and to solicit most earnestly their attention to, and patient investigation of the questions which present themselves in the record. And your petitioner, in urging this matter on the attention of the court, will be acquitted by them of pertinacious perseverance in pursuit of that which is even of doubtful right, fie cannot but pursuade himself; not only from his personal knowledge, and thorough conviction of tiie gross injustice done him, through the instrumentality of a court of justice, by the abuse of its process and jurisdiction, by an artful fabrication of a fictitious case, by the conjuring up ostensible and colorable demands, which, as far as they ever had real existence, have been long since satisfied; of which the excluded pleadings and depositions in the cause, furnish to all, who will pe-i ruse them, the most conclusive proofs.
That love of justice and desire for its attainment, by this ultimate decree, in every case, which should characterise the upright judge, should not only prompt a full and deliberate investigation of the real and true merits of every case, hut incite the most astute and„ sagacious exercise of his keenest perceptions, in discovering the just and efficacious means for its attainment; and in the pursuit of th«s *462 purpose, in the present case, where a decree most flagrantly unjust had been procured, ex parte, on the representations of the plaintiff, unaccompanied by 'sufficient vouchers, and destitute of the proper proofs, in tlie absence of the defendant and his evidence; without appearance and without defence, the chancellor will enquire and ascertain to his entire satisfaction, that lie lias complete and unquestioned-jurisdiction of the case, before lie proceeds to execute it. To the exercise of this jurisdiction on the part of the court of equity, hoiden for the county of Gallatin, in a case like the present, for the recovery of pecuniary demands pniely personal and of a character entirely legal, for monies pretended to have been expended by the complainant for the defendant’s benefit, there are strong objections. The remedy, by action at law, fo be commenced in the county in which the defendant might be found and -served with legal process, and in which he has a right to the inestimable benefit of a jury trial, is clearly and perculiarly appropriate; and although (he jurisdictions of causes, personal, like the present, may be sometimes transferred to the equitable jurisdiction, it must be for some peculiar and sufficient cause other than that of the whim or caprice of the complaining party, or liis 'desire to procure, by the artifice of thus transferring jurisdiction, the. means of perpetuating, by the abuse of process and perversion of the equitable jurisdiction, the most flagrant injustice on his adversary, as in the present case.
Petition lor fc-ti earing.
The right of enforcing an equitable lien on real estate, in case of the personal irresponsibility of an absent or insolvent debtor, may operate this transfer of jurisdiction. And if, in the present case, the existence of such lien had been manifestly shewn,, and a desire and prayer for its enforcement had been clearly indicated by the complainant in his bill, the jurisdiction of the chancellor would not have been questioned. But the existence of such equitable lien on the undivided moiety of the defendant, to enforce the payment of improvements, not made on the premises by the complainant, of which he was not the owner, of improvements made by another, under an adverse conflicting claim, is not admitted, *463 hor can its existence, as he believes, be established in principle or authority. The improvements in question weie made by Buckhannon under an adverse claim. The conflicting titles had been litigated in the federal court. The federal tribunals had refused to execute the occupying claimant law of 1812 of this commonwealth, by which this lien was first created, on the ground of its confliction with the compact. The complainant, notwithstanding these decisions, of which this court must,take judicial notice, without the authority or privity of the defendant, his ’ co-tenant, had consented, as appears by his own exhibits, composing parts of his bill, to ■appoint commissioners for the assessment of these improvements ; and when they are thus assessed, without consulting with, or regarding the interest, of his co-tenant, and against his will, as security, (not as principal) for Brackenridge, executes his bond for the payment of the assessed amount, an enormous sum: and upon an alleged understanding (not express or positive agreement with the defendant) when he entered on the portion of land, oil which these improvements were situated, that he would- pay for them: • He has taken a decree for the whole estimated value of these improvements (which are proved to confer no additional value on the land) with an arrear of interest for many years, ■amounting almost to the full present value of the land and improvements altogether. Is not this flagrantly and outrageously unjust ? Anti does it deserve, or can it receive, the approving sanction of the chancellor or upright judges ?
¡Vuumi 'ora ri>!,caririS-
The opinion of the court, in the present case, as■stunes as a position, requiring illustration neither from argument or authority, that the complainant had a lien in the defendant’s moiety of the land, of which partition is sought for the estimated value of the improvements made by Buckhannon under the adverse claim ; and in the supposed existence of this lien, the jurisdiction of the circuit court of Gallatin, as a court of equity, to decree the payment thereof. The fact on which he predicates his right to them, is the payment by him of the amount to the occupying claimant, in consequence of a bond executed by him, as the security of the lessor of the plaintiff in *464 ejectment, in the absence of Talbot, without his' privity or consent, as is admitted in his bill, and was the result of a previous order of the court entered by the consent of the complainant without the judicial" action of the court, and is his voluntary act, without legal coercion, which would of itself confer no right on him or impose responsibility for tiie payment of the whole or any part on the defendant, especially as it was well known that the federal tribunals refused to execute the provisions of the occupying claimant acts on account of their incompatibility with the compact. Can a payment thus made confer on the complainant a lien upon the defendant’s moiety for the amount, up.onjhe allegation, that the defendant had entered on the portion thus improved, upon an understanding that he should pay to the complainant the amount ? The negative of this proposition can be maintained upon principle, and by authority of the judicial decisions of this court, to which the earnest attention of your honors is respectfully solicited. — The case of Delay and Hayden, reported in Litteli’s Select Cases, page 211. It was a bill filed by the occupying claimant against the successful claimant in ejectment, himself insolvent, who had sold and conveyed the land to Hayden, the defendant, to enforce a lien claimed by the complainant upon the land from which he was about to be evicted ; and upon full and mature deliberation, it was decided that no such lien existed, neither on principles of law or equity, and that none was conferred by the operation or true construction of the act of 1797, in virtue of which the improvements had been assessed. The Chief Justice, in the opinion delivered in that case, thus defines the right of “ lien.” “ A lien is a special right which one has in that of which another has the general property ; and to the extent of the lien it is an abridgement of the dominion which the latter has in the thing. From its nature, therefore, a lien can only be created by the consent of the party who has the general property, or by the operation of some positive rule.” Tested by this just definition of the rule thus correctly given, what are the complainant’s protensions to such lien, and to its enforcement in *465 the-present case? The circuit court of Gallatin fine] jurisdiction, it is conceded, bv bill in equity, to enforce partition of the land, held in common between the parties within the limits of its jurisdiction. As incident to that partition, the court has power, in the effectuation of this purpose, to regard the improvements made bv the labor of or at the expense of the respective parties; and equajity requires that, in making such partition, the improvements made bv each shall be preserved and assigned to each, or either, in such partition, and so far, and so far only, the improvements on such'land, of which such partition is sought, is incident, to the power or jurisdiction to make partition. The jurisdiction to make partition between persons holding jointly, appertained to the common law tribunals ; and when exercised bv the chancery court, by an extension of their original jurisdiction to the subject, should lie exercised in analogy to, and in conformity with, the principles that governed at common law, in the appropriate writ. Were this a writ of partitions facienda, then could it he plausibly pretended that in making such partition, the complainant here, could set up am! urge as an incident to such partition, the payment of a sum claimed as the assessed value of improvements, made on the premises, held in com-, mon by another party holding under adverse title, in virtue of some occupying claimant law, which the complainant alleged he had paid to such occupying claimant ; and would not such pretension he justly scouted ? The partition, in the present case, is sought by bill in equity in the county in which the land is situate, and to the effectuation of this object, the powers of the circuit court of Gallatin are competent. But ¡he pecuniary demand for the assessed value of improvements, which had been pla? ced on the premises bv another under an adverse title, and which the complainant alleges he had discharged to such occupying tenant, from his own shewing constituted a mere personal demand against the defendant, the jurisdiction for the enforcement. of which are the tribunals of common Jaw, and at the proper forum of the defendant’s ¡-esixlence The attempt, in the present case, to drag *466 them before the chancellor, by bill in equity, before an alien tribunal,remote from bis place of residence,is unauthorized by any principle of equitable jurisdiction, was a mere feirrt and artifice to'embarrass and surprise the adverse party tinder the disguise of an effort to obtain partition, which- had been effected many years before ’to the entire -satisfaction of the parties-, on terms too fair and equitable. By this artifice, reposing in tire careless- and confiding temper of his adversary, who, believing the suit to be merely a friendly one to procure mutual release of titles, omitted to appear and enter the defence, in due season, to <tho.se unjust demands; and -was thus ensnared bythe trap thus artfully set for his destruction. And will tiris, the appellate equitable tribunal of the country, stamp with its sanction and approbation a decree thus obtained, stained with the most •flagrant injustice, and ruinous in -its effects on -the ■interests'-of your petitioner .?
Petition rt’-boarini for a = •
Petition for a rehearing.
Petition for resh earing.
To progress with the enquiry. Bad Buckhan» non, the occupying Claimant himself at the time of filing the complainant’s bill, any lien upon the interest of your pertitioner in the land, for the assessed value of his improvements ? rl he answer must he unequivocally in the negative. It is true, that a tien is given by th’e act of 1B12 in favor of the occupying claimant, but, as before remarked, that act had been expressly repudiated by the federal courts as unconstitutional. The ejectment was there pending, and there decided against him, and if no lien existed there, how could such a one be created in the state-tribunals? And if no claim for payment, much less lien for the enforcement of such payment, existed in behalf of the occupying claimant, how could the voluntary payment, on the part of the complainant, of his own mere caprice, and in his own wrong, confer on him, not only a right to the payment of the amount on the part of this defendant-, but a lien ■bn his moiety of the land for the whole assessed value of such improvements ? Upon the simple and loose allegation in the bill, that the defendant entered on that part of the land on which the improvements had been made, upon an understanding that he would pay the amount of such improvement; And shall *467 ibis understanding, loose and vaguely stated, false as .it is in fact, and unsupported by one particle of evi* dence, contradicted- and refuted by all the testimony in the cause, be the foundation of a decree so destitute of all foundation in right and justice? And this upon tiie intimation, thrown out in the opinion, that the payment of the pecuniary demands, set up-in the complainant’s bill, were- all incident to the partition. They are indeed fearful and tremendous incidents, to which the pretence for partition was made the mere stalking horse to misguide and delude the delendant.
Petition for* a rG'llsa?'inS‘.
These considerations, hastily and-inaperfectly presented, and many others which might be- added -in illustration of them,, did- the occasion require or permit them, it is confidently believed will entitle your petitioner to a candid review of the opinion delivered herein by this honorable-court, and that a re-argument, on full preparation-of the questions involved in the decision, will ultimate in the vindication of'the ground lie-has ventured to assume in-contradiction, it is true,-but-with-all due respect.te' the court’s opinion.
The other items of the decreé, under revision, am of minor consequence, and will form the- subject of-' but brief remarks. The claim to the payment of $82 12 1-2 cents, as a balance due from the defendant on acconnt of his proportion of the the purchase money of his moiety of the land, rests upon the complainant’s allegation, that that sum is due,-and k ■ to be tested, by the exhibit* to which he referred, which constitutes an essential part of his bill. That exhibit is the agreement on the part of the complainant with Waller, for the purchase of the land, with ■that between the complainant and this defendant, by which the latter, as an equal partner, was admitted into a participation of the purchase as an equal partner. No time being fixed in his agreement with the complainant for the payment of his moiety of the purchase money — the agreement stating that a part of it only was paid down at the time of executing the agreement, it is fairly inferrible, and is a just construction of the agreement, that -the payments were-to be made to the complainant at. the periods *468 when he stood hound, by his contract of purchase,, to make the payments to Waller. The complainant; having resorted to a court of equity to enforce those payments in that court, calculations of interest on the sum due, as well as the payments by the defendant, should besmade on equitable principles; and in a calcution made in conformity with these principles,it allow ing interest on the balance of the principal sum due in-favor of the complainant until the first payment was made as endorsed on the instrument,and allowing interest in favor oft he defendant for prompt payment made by him to the eomplainant, as appears from the same-' endorsements, at periods long before the two last payments became due to Waller, which was not until the 1st January, 1818, for the one, and the 1st January, 1819, for the other, and last payment? which will be apparent from a comparison of the-payments endorsed on the defendant’s contract by Lie complainant himself, and the date of the complainant’s bond to Buckhannon, for the payments of his improvements ; the date of that bond and the fact of its execution fixing the time when the phiintiif in ejectment had a right to the possession of the premises under the provisions of the occupying claimant law An adjustment of these payments on equitable principles, then, will result in favor of the defendant, leaving a balance in his favor of some $70 dollars, if lie is correct in his calculations. Unless, therefore, the simple naked allegation in the complainant’s bill, that the defendant is indebted to him in the sum of $82 12 1-2, uncorroborated by, but contradicted by his own exhibits, is to give sanction to this unfounded claim; and it the construction which tiie defendant lias assigned to the agreement, is the correct one, the decree for the payment of this sum, with a long arrear of interest, is unjust, and should be reversed.
Petition for rfi-bearing. i
The remaining item of the complainant’s pecuniary demand, is founded on an allegation that he had paid some $40 odd, in taxes, on the land in question. If true, though he lias filed no exhibit, as he promises in his bill to do in its corroboration, surely has no connection with the partition sought for, andean form ño incident consequent on such partition, and, *469 as it should seem to your petitioner, can form no colorable pretence for calling in the aid of a court of equity of a different county, and distant from the residence of the defendant, to enforce the payment of such demand. But there is presented in the face of the decree an evidence of injustice in the sum decreed the complainant on account of a sum alleged ;o have been paid by him for improvements, assessed in favor of Buekhannon, so flagrant and so striking, that instead of meriting the sanction of tins court, deserves, and should receive its severest animadversion as a glaring imposition on the court. The complainant’s hill itself states the amount of improvements adjudged in favor of Buekhannon, •deducting the rents assessed against him in conformity with tiie provisions of the occupying claimant law, to he, as it truly was, the sum of $1080, for which he alleges he gave his bond as the security of Breckenridgc, the plaintiff in ejectment, and which sum alone, and no more, he alleges he discharged. But he unhlushingly pretends to insinuate in his hill-, that the one half the sum, $390, deducted from the assessed value of the improvements, assessed against Buekhannon, should be paid to him, the complainant, Samuel Todd, because the defendant enjoyed the Occupation of the premises on his entry thereon, after the surrender of the possession by the occupant.
Petition i-ir a ru""t,an"S“
The shameless and unfounded character of this absurd pretension need only be hinted at. To enlarge upon a pretension so preposterous, would be an abuse of time and the patience of the court. It seems father insinuated, than openly avowed as the foundation of a demand in the complainant’s bill, and it is disguised, in drawing the decree of the circuit court, by confounding or adding it to the sum of $1080, the value of the improvements, really adjudged in favor of Buekhannon, making an aggregate sum of $1335, for which a decree is entered against your petitioner in the name of “ improvements,"1 and is there endeavored to be sheltered from the castigation which is merited by the gross injustice of the claim. By this artifice, has this abuse of chancery jurisdiction been not only concealed from *470 the circuit court, but it has been permitted to escape the vigilant inspection of your honors in the revision of this decree.
Potitiou I' ■flvjj earing. 1 a
This sum of $1336, thus made up, being referred to in the opinio)) as the sum found due, and paid to Buckhannon, by the complainant, in virtue of the occupying claimant law. But, to return to the objections to the jurisdiction of the court of equity, sitting for the county oí Gallatin, to decree the sums demanded by tiie complainant’s bill, which are not yet half exhausted. The claims set. up, are all of them personal and pecuniary, forming properly the subject of an action on the implied assumpsit1 at common law. There is the certain and appropriate as we!! as ample remedy. To transfer these causes of action to another tribunal, a court of equity, remote from the defendant’s place of residence, to be just and appropriate, a just cause and motive ©n the part of the complainant, should be alleged and shewn. To make out a case for that equity jurisdiction, the complainant, by his allegations, if he have a lien upon the defendant’s moiety of the land in question, the cause and foundation of such lien must be asserted by his bill, it being essential to the conferring jurisdiction' on the court, and its enforcement prayed for in appropriate terms. The only cause for having recourse to this court for the enforcement of the lion, his inability to enforce the payment of his demand by proceeding at law against the person, the insolvency of the party, or his absence from the country or his'evasion of the service of legal process, or some such cause. And only upon a case thus made out, invoking the aid of a court of equity, the interposition of its extraordinary aid might be deemed essential JLo secure the justice sought for, could the equity jurisdiction of the chancellor have been legitimately exercised ? Wot by a general decree, as in the present case, but by a decree in rem. by sale of the land on whielt the complainant’s clftim, as well as the jurisdiction of the court attached. And such, it is believed, has been the invariable course of practice in the courts of equity, in which lietis founded not on contract, as deeds of trust or mortgages, but only in equitable *471 rules or implications, have been enforced. Much more might be said on this question, hut I forbear to urge them on the patience of the court. To their own enlightened minds and mature reflections, are referred for farther illustrations of the injustice and impolicy of such restraints on the exercise of the chancery povver by the court of original jurisdiction; of the baleful and deleterious consequences of which, this case affords for your petitioner a most unhappy example.
Petition forii re-licaring.
But the attitude which the case assumes, when the defendant appeared for the first time and moved to ojien the decrees which had been pronounced against him on the hill taken for confessed, and the character of the decree, which lias been assigned to them by your honors in this opinion, are matters which your petitioner hopes, ás he sincerely thinks they deserve, wifTengage the serious meditation of the court, as they are of deep concern, not only to himself, lint to the interest of justice, and of all suitors in our courts of equity.
By this opinion, the decree which had been pronounced at a former term for the payment of definite sums of money', is deemed and held a final one, and the circuit court, of consequence, inhibited the [lower toojien such decree, for any cause, at any term subsequent, to that of its rendition. Although another part of the decree, evidently interlocutory, directing commissioners to make partition of the land, had not been acted on by a report of the commissioners, or final decree thereon for partition and mutual release of title.
That the branch of this decree, which directed a partition, was interlocutory, if there is a distinction between-decrees interlocutory and final, seems not only to be admitted' by the opinion, hut seems to© clear to admit of argument or illustration. What shall be deemed a decree final in a cause ought surely not to be a matter of difficult solution. If we take the meaning of the term, there is surely not one in the language more emphatic.
A final decree must be that which forever puts ata intire end, by closing the door of justice on the. pay- - flies, suitors in that court.
Pit t i" lor rtí-íiciifing. 1
It’ we refer (o the practice of the English courts of equity, we find this meaning assignee! to such decree, in conformity with which, when such final decree is pronounced as that referred to winch ends the above cause, and every part, of it, the decree is availed in parchment, and then, and not till then, is placed bevond tiie reach or discretion of the chancellor who pronounced it; who has power at all periods previous to such enrolment, on proper ground made out, to open or modify such decree, or tó grant a re hearing of the cause. Decrees, then, are not final that do not put an entire end and finish of the cause before the court of original jurisdiction, whether they consist of orders in the progressing or preparing of the canse, by successive steps, investigating or illustrating the facts and principles finally to be matured and, settled, or interlocutory decrees or orders, whether such intermediSte orders or decrees settle all or onlv part of the facts and principles involved in the final decision, Or determine one or all the branches of the dispute or controversy; whether' they decree the payment of sums of money either certainly or definitively, as in the present case ; although they may he definite as to the amount of sums, or things to be paid or done by one or the other party, are not and do not constitute the final decree in the cause. Nor is this ever made, till, In-disposing of the whole cause and every branch of it, even to the costs, the doors of that tribunal heconies forever closed ; and the parties are left to their b'.il of review, or an appeal to the tribunal having a reviving power. Were not this so, but as the.opinion of the court seems to indicate, the decree for the payment of definite sums of money, as well as that for a partition by commissioners who had not yet acted or reported, were final, there might and would be in this and irvanv other causes, not one. hut two or more final decrees in the same cause, one final and the others still more final, ad infinitum, until confusión, worse confounded, would ensue; and it would he difficnli to determine when the parties had got to the final termination of any cause. But if, as indeed it appears to vour petitioner self-evident, there can be but one final decree in the same cause by the court *473 of original jurisdiction, it is that decree, and that only, which, having settled not one, but all the matters in contest between the parties, closes the door of litigation of that tribunal, and puts the parties to their bill of review or a revision of the case before the appellate jurisdiction ; and for the correctness os' this definition, vonr petitioner refers your honors to llinde’s and other books of chancery practice, which he believes will bear him out in tiie positions he has assumed. And, surely, if he is supported by the English adjudications and the practice of the courts of equity in this country, the principles « hi. h ought to govern in such court will be better effeituated, and the substantial ends of justice be better and more certainly attained, bv the liberal application of an enlightened and just discretion exercised over parties, by giving them ample time for the lull preparation of their canses, and thereby attaining the ultimate end and purpose of all earthly tribunals, equal and substantial justice.
¡'< ut.un ora ro-li«anng.
In support of the power of the chancellor to set aside, or modify his decrees, on motion, or by petition, and the stage at which such decree becomes irrevocable by the court of original jurisdiction, the court are referred to Hinde’s Practice in Chancery, page 442, 445 ; II Atkins, 403. II Vezey, 577.
But authority still more conclusive on this question, will he found in the case of Kemp vs. Squire, I Vezey, 205.
It was a petitioh to have the enrolment of a decree set aside because of the great neglect of the .solicitors employed in the cause ; and on solemn argument, and the citation of several cases, which are fully stated in the argument, the decree, althou.li final and enrolled, was set aside. The chancellor, in delivering his opinion, employing this emphatic language: “No irregularity or misbehavior of the defendant to induce the court to set aside this enyclment ; hut any court of justice will incline, as far as in its power, to open what is concluded, that the clients may come before the court, and that the plaintiff may not be pie. luded fi'oin entering ihereon, and have justice done.” And in a subsequent page of the same opinion, he says; “ Compare this *474 to the proceedings at common law, when a judgment is signed, by default, for ward, of a plea or any other default, although the'plaintiff iu'the cause is strictly regular, yet will the court set aside that judgment, tiiougli they will vary the circumstances and terms on the defendant, according to the nature of the ease.”
reinar" ,or a re earmg.
The attention of the court is most earnestly solicited to an attentive perusa' of 'this case, as one admirably calculated to evince the liberal indulgence of the British chancellor in effecting the purpose for which that liberal tribunal was instituted — the attainment of the ultimate justice of all cases in litigation’before them, by extending the time and opportunity for full and ample preparation and investigation of the entire merits of a cause before the door of justice is finally closed upon them. A final decree-enrolled on .parchment in all the solemn forms of that court, having been opened and set aside by this enlightened chancellor; for which it will appear he has the authority not only of former chancellors, but of the House of Lords.
Wherefore, and -especially for the flagrant error in the face of the decree itself, in relation to the sum decreed on account of the monies paid Btickhannon for his improvements, against your petitioner, he prays that a re-hearing of the cause may be awarded him- I. TALBOT.